## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JAN MARIE FIRST, ) | |
| ) | |
| Plaintiff. ) | |
| ) | |
| v. ) | Case No. 18-CV-0644-JED-CDL |
| ) | |
| JUSTIN HOKETT, et al., ) | |
| ) | |
| Defendants. ) | |

### OPINION AND ORDER

Before the Court are plaintiff's first amended complaint (Dkt. # 8) and a motion to dismiss on behalf of the three defendants remaining, John Pearson, Justin Hokett, and City of Salina, Oklahoma (Dkt. # 10).[1] For the reasons set forth below, the Court grants in part and denies in part defendants' motion to dismiss plaintiff's first amended complaint.

### I. BACKGROUND

According to the amended complaint, defendant Justin Hokett, the chief of police for the City of Salina, received a misdemeanor arrest warrant for plaintiff on February 17, 2016, issued by a Mayes County judge based on a criminal information filed in Mayes County, alleging that plaintiff obtained property by false pretenses, in violation of Okla. Stat. tit. 21, § 1541.1. Dkt. # 8, at 4, 14. One week later, on February 23, 2016, defendant Hokett and defendant John Pearson, a City of Salina police officer, attempted to serve the arrest warrant at the duplex in which plaintiff resided at the time. Id. at 4. Defendants arrived at plaintiff's residence shortly before 12:25 p.m., and proceeded to pound on plaintiff's door. Id. At the time, plaintiff was lounging in an oversized

---

[1] The fourth defendant named in plaintiff's first amended complaint, Mayes County, Oklahoma, was dismissed pursuant to an order of dismissal entered on November 26, 2019. Dkt. # 19.

shirt and no underwear and was startled by the thunderous banging on her door. Id. at 4-5. Plaintiff's startle turned to paralysis, believing that her sibling—who had allegedly stalked plaintiff—had learned of plaintiff's whereabouts and was attempting to harm her. Id. at 4. The pounding on plaintiff's front door gave way to banging on the back door, followed by the sound of someone attempting entry through the back door, though it was locked and barricaded with stacked boxes. Id. During this time, plaintiff received an incoming call on her cell phone, identified as "private number," which she did not answer. Id. While plaintiff heard talking outside, she could not make out what was being said or who was present, and she waited in silence until the knocking ceased. Id. at 4-5.

When the knocking eventually ceased, plaintiff waited roughly five minutes before venturing out the front door. Id. at 5. Plaintiff noticed that both the gate to the duplex and the gate to the front yard were ajar, and plaintiff cautiously took two steps to close the duplex gate. Id. As she slowly closed the duplex gate, plaintiff saw a car blocking the driveway, and she immediately retreated inside the residence and locked the front door. Id. Seconds later, plaintiff heard pounding on her front door and then witnessed defendants Hokett and Pearson exploding into the residence. Id. It was at this point that plaintiff observed that Pearson and Hokett were dressed as police officers, and they informed plaintiff that they were there to arrest her. Id. Plaintiff requested that she be allowed to put her dogs in a crate, put on a robe, and get her phone, and defendants agreed to her requests. Id. Plaintiff was then escorted to the service vehicle, where she was handcuffed and informed that she would also be charged with resisting arrest, in addition to her initial misdemeanor charge. Id.

Assistant District Attorney Mary E. Walters formally charged plaintiff with resisting arrest, in violation of Okla. Stat. tit. 21, § 268 ("Every person who knowingly resists, by the use of force

or violence, any executive officer in the performance of his duty, is guilty of a misdemeanor."). Id. at 5-6. However, on September 9, 2016, the original charge of obtaining property by false pretenses was dismissed, and the resisting arrest charge was amended to obstructing an officer, in violation of Okla. Stat. tit. 21, § 540 ("Any person who willfully delays or obstructs any public officer in the discharge or attempt to discharge any duty of his or her office, is guilty of a misdemeanor."). Id. The State eventually dismissed the obstruction charge, bringing plaintiff's brush with the criminal justice system to a conclusion on December 8, 2016. Id. at 20.

Plaintiff filed her complaint on December 10, 2018, seeking damages against the City of Salina as well as Hokett and Pearson, in their individual and official capacities. Dkt. # 1. Defendants filed a motion to dismiss on March 29, 2019. Dkt. # 4. Counsel for original defendants agreed to allow plaintiff leave to file an amended complaint, which plaintiff filed on April 25, 2019. Dkt. # 8, at 1.

Plaintiff's amended complaint added claims for relief and named Mayes County as an additional defendant. Id. Plaintiff also added factual allegations concerning two wholly unrelated matters. First, plaintiff alleges that her name and personal address were published after the issuance of her misdemeanor warrant. Id. at 6. Because of this publication, plaintiff was worried that her brother would discover the location of her residence and do her harm. Id. at 6-7. Plaintiff discussed the issue with a person in the Mayes County court clerk's office, and her addressed was changed from her physical address to her post office box. Id. at 7. Plaintiff claims that her physical address is still publicly available at the court clerk's office. Id.

Second, plaintiff's amended complaint also alleges that her home caught fire on May 11, 2016, which resulted in the complete loss of her residence. Id. at 6-8. Though it remains unknown, plaintiff nevertheless obliquely attributes the cause of the fire to her estranged brother, who would

3

have ostensibly been able to discover plaintiff's address after it was published by Mayes County. Id. at 10. Plaintiff's amended complaint further alleges that, despite not having identified the cause of the fire, neither plaintiff nor her three duplex neighbors were ever questioned by anyone from the City of Salina in the course of its fire investigation. Id. at 8.

Hokett, Pearson, and City of Salina filed a motion to dismiss the amended complaint on May 7, 2019 (Dkt. # 10), and Mayes County filed a motion to dismiss on June 19, 2019 (Dkt. # 16). Plaintiff responded to Hokett, Pearson, and City of Salina's motion to dismiss (Dkt. # 11), but not to Mayes County's motion. In light of plaintiff's failure to respond, Mayes County moved to confess judgment (Dkt. # 18), which the Court granted and dismissed Mayes County as a party (Dkt. # 19). The Court now addresses the motion to dismiss plaintiff's claims against the remaining defendants—Hokett, Pearson, and City of Salina.

## II. DISCUSSION

### A. Claims for Relief

All of plaintiff's claims arise under 42 U.S.C. § 1983 for deprivation of rights secured under the Fourth or Fourteen Amendments to the United States Constitution. Plaintiff's amended complaint enumerates three claims for relief against the remaining defendants: (1) Fourth Amendment violation for unreasonable search and seizure against Hokett and Pearson; (2) malicious prosecution against Hokett, Pearson, and City of Salina; and (3) Fourteenth Amendment violation for reckless disregard against City of Salina. Dkt. # 8, at 8-11. While plaintiff omits City of Salina from her Fourth Amendment claim, the amended complaint states that "[t]his is an action brought . . . against [s]tate [o]fficials . . . acting in their respective official and individual capacities." Id. at 2. Moreover, in her response to the motion to dismiss, plaintiff argues that Hokett is a final policymaker for purposes of municipal liability with respect to her Fourth Amendment

4

and malicious prosecution claims. Dkt. # 11, at 6-7. Thus, in affording her complaint the "solicitous construction due a pro se filing," Dudnikov v. Chalk & Vermilion Fine Arts, Inc., 514 F.3d 1063, 1073 (10th Cir. 2008), the Court construes plaintiff's amended complaint as seeking municipal liability against City of Salina for all three claims.

### B. Legal Standard

"The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's . . . complaint alone is legally sufficient to state a claim for which relief may be granted." Brokers' Choice of Am., Inc. v. NBC Universal, Inc., 757 F.3d 1125, 1135 (10th Cir. 2014) (internal citations omitted). A complaint is legally sufficient only if it contains factual allegations such that it states a claim to relief that "is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. at 555 (internal citations omitted) (alteration original). Instead, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). This plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." Id.

In the context of claims brought under 42 U.S.C. § 1983, a "complaint needs but two allegations . . . (1) that the plaintiff was deprived of a federal right; and (2) that the person who deprived him acted under color of state law." Choate v. Lemmings, 294 F. App'x 386, 392 (10th

Cir. 2008).[2] At the motion to dismiss stage of litigation, "[a]ll that is required are 'sufficient facts, that when taken as true, provide plausible grounds that discovery will reveal evidence to support plaintiff's allegations.'" Id. (quoting Gann v. Cline, 519 F.3d 1090, 1092 (10th Cir. 2008)).

The Court is mindful that plaintiff is proceeding pro se. In light of that, plaintiff's pleadings must be construed liberally and held to less stringent standards than pleadings drafted by lawyers. Haines v. Kerner, 404 U.S. 519, 520 (1972). "[T]his rule means that if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so despite the plaintiff's failure to cite proper legal authority, [her] confusion of various legal theories . . . or [her] unfamiliarity with pleading requirements." Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991). However, a district court should not assume the role of advocate, and liberal construction does not transform "vague and conclusory arguments" into valid claims for relief. Ogden v. San Juan Cnty., 32 F.3d 452, 455 (10th Cir. 1994).

**C. Fourth Amendment Claim for Forcible Entry Against Hokett and Pearson**

Plaintiff alleges that Hokett and Pearson's forcible entry into her home on a misdemeanor warrant was unreasonable under the circumstances and, therefore, in violation of her Fourth Amendment rights. Dkt. # 8, at 8. In their motion to dismiss, defendants contend that plaintiff failed to sufficiently plead a claim under the Fourth Amendment, citing the fact that the officers "had probable cause as well as a valid warrant" at the time of plaintiff's arrest. Dkt. # 10, at 6. Plaintiff counters that defendants' argument misses the gravamen of her Fourth Amendment claim, namely, that the warrant did not authorize forcible entry into her home. Dkt. # 11, at 7-8. Plaintiff appears to premise her claim on two alternative theories: (1) that forcible entry into a private

---

[2] This and other cited unpublished decisions are not precedential but may be cited for their persuasive value. See Fed. R. App. P. 32.1; 10th Cir. R. 32.1.

residence on a misdemeanor warrant is categorically unreasonable, and (2) that the officers' actions throughout the search and seizure were unreasonable under the circumstances.

While absent from their motion to dismiss, defendants' reply asserts that, under Payton v. New York, 455 U.S. 573 (1980), law enforcement officers may enter a private residence to execute a misdemeanor warrant when they reasonably believe that the arrestee resides there and is within the residence at the time of entry. Dkt. # 14, at 4. To that end, defendants state that they were present "when [p]laintiff opened the front door and stepped onto her front porch," and thus, reasonably believed plaintiff was inside the residence when they forcibly entered. Id. at 4-5. Accordingly, defendants argue that, under Payton, their forcible entry of plaintiff's residence was lawful. Id.

To the extent that plaintiff's Fourth Amendment claim relies on the theory that law enforcement may not enter her residence on a misdemeanor warrant, plaintiff is incorrect.[3] However, the "ultimate touchstone of the Fourth Amendment is 'reasonableness,'" United States v. Metts, 748 F. App'x 785, 788 (10th Cir. 2018) (quoting Brigham City, Utah v. Stuart, 547 U.S. 398, 403 (2006)), and plaintiff contends that the defendants' actions were unreasonable notwithstanding the existence of a valid arrest warrant. Dkt. # 8, at 8. Thus, the existence of a valid arrest warrant is not dispositive of the Court's Fourth Amendment inquiry in this case.

---

[3] The Court notes that, while Payton involved a felony warrant, the Tenth Circuit appears to have at least implicitly recognized the extension of Payton to misdemeanor warrants. Howard v. Dickerson, 34 F.3d 978, 981 (10th Cir. 1994). All other circuits that have directly addressed the issue have held that law enforcement may forcibly enter a home pursuant to a valid misdemeanor warrant. See United States v. Spencer, 684 F.2d 220, 222-24 (2nd Cir. 1982); Shreve v. Jessamine Cty. Fiscal Court, 453 F.3d 681 (6th Cir. 2006); United States v. Clayton, 210 F.3d 841, 844 (8th Cir. 2000); United States v. Alberktsen, 151 F.3d 951, 953 (9th Cir. 1998). Indeed, as the District of Kansas has observed, "[t]he weight of authority persuades the court that Payton is not limited to the execution of felony warrants and that officers serving a misdemeanor arrest warrant have the limited authority to enter a suspect's resident when the officer reasonably believes the suspect is present." United States v. Meindl, 83 F. Supp. 2d 1207, 1215 (D. Kan. 1999).

7

In reviewing the amended complaint, it appears that Hokett and Pearson never announced their authority or purpose before forcibly entering plaintiff's residence. Specifically, plaintiff alleges that Hokett and Pearson arrived at her residence, began pounding on her front door, attempted to enter through the back door, attempted a phone call from a private number, and kicked in her door after a fleeting glimpse of a person closing the threshold gate of plaintiff's residence. Dkt. # 8, at 4-5. Plaintiff alleges that she did not know the defendants' purpose or authority until after they had already kicked in her door. Id. at 5 ("Plaintiff turned and observed the front door exploding in, as [defendants] entered into the duplex. . . . dressed as police officers and stated they were there to arrest [plaintiff].").

At the Rule 12(b)(6) stage, the Court must accept plaintiff's allegations as true and grant all reasonable inferences in plaintiff's favor. Viewed in a light most favorably to plaintiff, the Court finds that Hokett and Pearson failed to knock and announce their presence before forcing entry into plaintiff's residence. Thus, for purposes of the motion to dismiss, plaintiff has stated a claim that defendants' conduct was unreasonable and in violation of the Fourth Amendment. See United States v. Masa, 401 F.3d 1208, 1212 (10th Cir. 2005) ("the Fourth Amendment incorporates the common law requirement that police officers entering a dwelling must knock on the door and announce their identity and purpose before attempting forcible entry") (quoting Richards v. Wisconsin, 520 U.S. 385, 387 (1997)); see also Duran v. Muse, No. 16-CV-717-TCK-JFJ, 2017 WL 5985568, at *5 (N.D. Okla. Dec. 1, 2017), aff'd, 721 F. App'x 833 (10th Cir. 2018) (denying motion to dismiss based on officers' failure to knock and announce when complaint alleged officers did not inform plaintiff of warrant and gave only threatening demands before forcibly entering plaintiff's home). Accordingly, the Court finds that plaintiff has pleaded facts sufficient

to support a claim against Hokett and Pearson under 42 U.S.C. § 1983 for an alleged violation of plaintiff's Fourth Amendment right against unreasonable searches and seizures.

### D. Malicious Prosecution Claim Against Hokett and Pearson

Plaintiff's second § 1983 claim against defendants is for malicious prosecution, alleging that Hokett and Pearson lacked probable cause to charge her with resisting arrest, which was later amended to obstructing an officer. Defendants raise two challenges to plaintiff's malicious prosecution claim. First, defendants assert that plaintiff has failed to plead sufficient facts to support a malicious prosecution claim. Dkt. # 10, at 7-8. Second, defendants argue that plaintiff's malicious prosecution claim is barred by the statute of limitations. Id. at 2-3.

#### 1. Sufficiency of Pleading

"Unreasonable seizures imposed with legal process precipitate Fourth Amendment malicious-prosecution claims." Margheim v. Buljko, 855 F.3d 1077, 1085 (10th Cir. 2017) (quoting Myers v. Koopman, 738 F.3d 1190, 1194 (10th Cir. 2013)). "Tenth Circuit precedent recognizes five elements [of] a Fourth Amendment malicious-prosecution claim under § 1983: (1) the defendant caused the plaintiff's continued confinement or prosecution; (2) the original action terminated in favor of the plaintiff; (3) no probable cause supported the original arrest, continued confinement, or prosecution; (4) the defendant acted with malice; and (5) the plaintiff sustained damages." Taylor v. Thomas, No. 18-CV-269-GKF-FHM, 2020 WL 2114363, at *3 (N.D. Okla. May 4, 2020) (citing Margheim, 855 F.3d at 1085). "If police officers have been instrumental in the plaintiff's continued confinement or prosecution, they cannot escape liability by pointing to the decisions of prosecutors or grand jurors or magistrates to confine or prosecute him. They cannot hide behind the officials whom they have defrauded." Robinson v. Maruffi, 895 F.2d 649, 656 (10th Cir. 1990) (quoting Jones v. City of Chicago, 856 F.2d 985, 994 (7th Cir.1988)).

9

Here, defendants argue that "[p]laintiff's only allegation to support her claim for unlawful seizure is a singular statement in her 'GENERAL FACTIONAL ALLEGATIONS' that 'the charge was erroneous and that [p]laintiff was not guilty of the charge.'" Dkt. #10, at 8. However, the Court is not persuaded by defendants' less-than-complete summary of plaintiff's factual allegations. To the contrary, the Court finds that plaintiff's amended complaint contains sufficient facts to support a malicious prosecution claim. Specifically, plaintiff alleges that she hid in fear when Hokett and Pearson began pounding on the door because she believed someone was attempting to break into her residence and did not know it was law enforcement. Dkt. # 8, at 4-5. Moreover, plaintiff also alleges that, after Hokett and Pearson entered her residence, she requested an opportunity to clothe herself properly (being partially undressed at the time), to crate her animals, and to retrieve her personal belongings—requests to which defendants allegedly agreed. Id. at 5-6. Plaintiff further alleges that, upon Hokett and Pearson's entry into her residence, plaintiff acted only with their permission and employed no force against them. Id. at 6. Upon being brought to the service car, plaintiff states that Hokett informed her that she would be further charged with resisting arrest. Id. at 5. She was charged with resisting arrest under Okla. Stat. tit. 21, § 268, which was later amended to obstruction of an officer under Okla. Stat. tit. 21, § 540. Id. at 6. Finally, plaintiff claims that it was through her attorney's successful efforts that the assistant district attorney dismissed the charge because there was no evidence that plaintiff physically resisted arrest or acted without permission of Hokett and Pearson throughout the entire ordeal of her arrest. Id.

Plaintiff's recitation of events makes clear that, if true, there is no reasonable basis for the charges related to her arrest, that those baseless charges were made at the behest of Hokett, that her criminal prosecution was unnecessarily prolonged because of those baseless charges, and that she was eventually vindicated through the successful efforts of her attorney. Thus, the Court finds

that plaintiff has marshaled sufficient "factual content" for the Court "to draw reasonable inferences that defendant[s could be] liable for the misconduct alleged." Iqbal, 556 U.S. at 678. Accordingly, defendants' Rule 12(b)(6) motion to dismiss the malicious prosecution claim is denied.

### 2. Statute of Limitations

Defendants also contend that plaintiff's § 1983 malicious prosecution claim should be dismissed because it is barred by the statute of limitations. Dkt. # 10, at 2-3. They point to the fact that plaintiff's criminal case was ultimately dismissed on December 8, 2016, but that her complaint was filed on December 10, 2018. Id. From this, defendants argue that the statute of limitations ran on plaintiff's § 1983 malicious prosecution claim two days before she filed her complaint. Id. Plaintiff responds by pointing to the fact that December 8, 2016, fell on a weekend, and that she filed the complaint on the following Monday—the first day on which the court was open after the statute had run. Dkt. # 11, at 5-6. Defendants make no further comment on the statute of limitations in their reply. Dkt. # 14.

The statute of limitations for § 1983 claims is governed by the forum state's personal injury statute, Mondragon v. Thompson, 519, F.3d 1078, 1082 (10th Cir. 2008), which is two years in Oklahoma. Okla. Stat. tit. 12, § 95(A)(3). Further, the § 1983 malicious prosecution limitation period begins to run when the original action has been terminated in favor of plaintiff. Beck v. City of Muskogee Police Dep't, 195 F.3d 553, 560 (10th Cir. 1999) ("[B]ecause these claims did not arise until the . . . charge was dismissed and [the] complaint was filed less than two years later, they are not barred by the statute of limitations"). Thus, defendants are correct that plaintiff's malicious prosecution claim would ordinarily be barred on December 8, 2018, which is two years after the dismissal of plaintiff's criminal obstruction charge. However, Oklahoma recognizes

Saturdays and Sundays as holidays, Okla. Stat. tit. 25, § 82.1(A), which therefore extends the limitation period to the next day that the court is open. Slawson v. Bd. of Cty. Comm'rs of Logan Cty., 288 P.3d 533, 534-35 (Okla. 2012); see also Mondragon, 519 F.3d at 1082 (recognizing timeliness of filing on Monday when limitation period ended on a Sunday). The parties do not dispute that December 8, 2018, was a Saturday, extending the limitation period to Monday, December 10, 2018. As a result, the Court finds that plaintiff timely filed her § 1983 malicious prosecution claim on December 10, 2018.

### E. Municipal Liability for § 1983 Claims of Unreasonable Search and Seizure and Malicious Prosecution

"Cities cannot incur liability under § 1983 on a respondeat superior theory, but can be liable if a final policymaker takes unconstitutional action." Vogt v. City of Hays, Kansas, 844 F.3d 1235, 1251 (10th Cir. 2017) (citing Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658, 691 (1978)). Even "an isolated decision by a municipal official that is not intended to control future decisions can, nonetheless, give rise to municipal liability under appropriate circumstances." Thomas v. City of Snyder, Okl., 103 F.3d 145 (10th Cir. 1996) (Table), 1996 WL 662453, at *4. In order to establish municipal liability based on an official's actions, the "key inquiry . . . is whether that official has the policymaking authority necessary to make his acts those of the municipality." Id. "Whether an individual possesses final policymaking authority 'is a legal issue to be determined by the court based on state and local law.'" Hollingsworth v. Hill, 110 F.3d 733, 743 (10th Cir. 1997) (quoting Randle v. City of Aurora, 69 F.3d 441, 447 (10th Cir.1995)). The Tenth Circuit uses a three-prong test to determine whether, under state and local law, an individual possesses final policymaking authority: "(1) whether the official is meaningfully constrained 'by policies not of that official's own making;' (2) whether the official's decision[s] are final—i.e., are they subject to any meaningful review; and (3) whether the policy decision purportedly made by

the official is within the realm of the official's grant of authority." Randle, 69 F.3d at 448 (quoting City of St. Louis v. Praprotnik, 485 U.S. 112, 127 (1988)).

Here, plaintiff clearly alleges that (1) Hokett was present for her arrest; (2) Hokett violated her constitutional rights; (3) Hokett was acting in his individual and official capacities when her rights were violated; and (4) Hokett has final policymaking authority over matters related to the allegedly unconstitutional conduct for City of Salina. Dkt. # 8, at 2-6; Dkt. # 11, at 6-7. It does not strain credulity to infer that City of Salina's police chief is a final policymaker with respect to the manner in which misdemeanor warrants are executed and the manner in which police reports are submitted to the district attorney for potential criminal charges. As a result, plaintiff leaves little to the imagination regarding City's liability for Hokett's claim and, therefore, has given sufficient notice to City of her claims against it. Vogt, 844 F.3d at 1251 ("The complaint alleges that the . . . police chief had final policymaking authority for the police department. There is nothing in the complaint to suggest that his decisions were subject to further review up the chain-of-command."). Thus, the relevant inquiry turns on whether, under state and local law, Hokett has final policymaking authority over the manner in which misdemeanor warrants are executed, as well as the contents of police reports submitted to the district attorney.

Rather than elucidate the relevant state and local law that might dispel Hokett as final policymaker for City of Salina, defendants, yet again, resound the drumbeat of Iqbal and Twombly. Dkt. # 10, at 6 ("A single boiler-plate, conclusory statement is insufficient to state a cause of action against [d]efendant City, let alone establish [that] a municipal custom or policy of unreasonable search and seizures and bad faith prosecutions existed in the Salina Police Department."); Dkt. # 14, at 2 ("merely naming [d]efendant Hockett [sic] as a 'policy maker' does not satisfy the pleading requirements necessary to maintain a cause of action against [d]efendant City for municipal

13

liability."). Defendants continue to scratch where it does not itch: plaintiff has pleaded sufficient facts to support a claim against City of Salina, but defendants fail to discuss—or even mention—state and local law regarding Hokett's policymaking authority as police chief for the City. In the absence of state and local law to the contrary, plaintiff's allegations regarding municipal liability are afforded the benefit of all reasonable inferences at this stage of litigation. Vogt, 844 F.3d at 1252 ("The absence of [relevant ordinances] is fatal at this stage, where we must view all of the allegations and draw all reasonable inferences in favor of [plaintiff]."). Accordingly, defendants' motion to dismiss plaintiff's claims against the City of Salina for the unreasonable search and seizure and malicious prosecution is denied.

**F. Reckless Disregard Claim Against the City**

Plaintiff's final § 1983 claim against the City is for reckless disregard of her rights protected under the Fourteenth Amendment. Dkt. # 8, at 10-11. Plaintiff alleges that the City of Salina acted with deliberate indifference toward plaintiff in failing "to conduct any meaningful investigation of the destructive fire" of her residence, thereby leaving the cause of the fire unresolved. Id. at 10. However, simply put, plaintiff has failed to identify a constitutional deprivation in the City's investigation of the house fire. Moreover, plaintiff's claim is against the City of Salina, and plaintiff has not pleaded that her right to a meaningful investigation was caused by an official municipal policy or custom. Thus, even assuming that plaintiff was deprived of a right to a meaningful fire investigation, plaintiff has not shown its connection to municipal custom or policy, as is required under Monell. 436 U.S. at 694. Accordingly, plaintiff's Fourteenth Amendment claim against the City of Salina is dismissed without prejudice.

**IT IS THEREFORE ORDERED** that defendants Justin Hokett, John Pearson, and City of Salina's motion to dismiss (Dkt. # 10) is **granted in part and denied in part**. The Court **grants** defendants' motion to dismiss plaintiff's Fourteenth Amendment reckless disregard claim against the City of Salina; the Court **denies** the remainder of defendants' motion to dismiss. Accordingly, plaintiff's Fourth Amendment unreasonable search and seizure and malicious prosecution claims remain pending against Hokett, Pearson, and City of Salina; plaintiff's Fourteenth Amendment reckless disregard claim against the City is dismissed without prejudice.

**DATED** this 23rd day of February, 2022.

*Claire V. Eagan*
_____
CLAIRE V. EAGAN
o/b/o JOHN E. DOWDELL
UNITED STATES DISTRICT JUDGE