IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JAN MARIE FIRST,<br><br>               Plaintiff,<br><br>vs.<br><br>JUSTIN HOCKETT[1], et al.,<br><br>               Defendants. | )<br>)<br>)<br>)<br>)<br>)   Case No. 4:18-cv-00644-JWB-CDL<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## **MEMORANDUM AND ORDER**

This matter comes before the court on Defendants' motion for summary judgment. (Doc. 36.) Plaintiff opposes the motion (Doc. 40), and the matter is fully briefed (Doc. 42). For the reasons stated herein, Defendants' motion is GRANTED.

**I.    Facts and Procedural History**

The following statement of facts is taken from the parties' submissions.[2] Factual disputes about immaterial matters are not relevant to the determination before the court. Therefore, immaterial facts and factual averments that are not supported by record citations are omitted.

Plaintiff and a man named Gregory Creswell became acquainted in approximately 2008, and from then on, Plaintiff would run errands, house sit, and do other occasional chores for Mr. Creswell and his wife. (Doc. 8 at ¶ 8.) Mr. Creswell had paid Plaintiff by check in the past. (Doc. 36 at ¶ 6.) On October 15, 2016, Mr. Creswell filed a fraud report with the Salina Police

---

[1] Justin Hokett spells his name "Hokett" in his own declaration. (Doc. 36-2 at 2.) Accordingly, although Plaintiff's amended complaint uses both "Hockett" and "Hokett," the court will otherwise use the spelling "Hokett."

[2] Plaintiff supplied facts in her verified amended complaint which she relies on in her response to Defendants' motion for summary judgment. (Docs. 8, 40.) A plaintiff may properly rely on a verified complaint, which is treated as an affidavit, as summary judgment evidence provided it is "based on personal knowledge, contain[s] facts which would be admissible at trial, and show[s] that the affiant is competent to testify on the matters stated therein." *Conaway v. Smith*, 853 F.2d 789, 792 (10th Cir. 1988). The court relies only on the statements provided in Plaintiff's complaint which meet these requirements.

Department indicating that his checking account had been used online to pay an AT&T phone bill. (*Id.* at ¶ 4.) This was the same checking account used for the checks Mr. Creswell had previously written to Plaintiff. (*Id.* at ¶ 6.)

Chief Justin Hokett ("Hokett") was the Police Chief of Salina at that time. (*Id.* at ¶ 3.) Hokett began investigating Mr. Creswell's report and found that the online AT&T payment was made to an account for Jan First. (*Id.* at ¶ 5.) There was a Jan First living in Salina, and Hokett verified with the town utilities department that the utilities at the address listed were in Jan First's name. (*Id.* at ¶ 6.) Hokett also received information from AT&T, pursuant to a search warrant signed by District Court Judge Rebecca Gore, that the payment was applied to Plaintiff's account for her phone number. (*Id.* at ¶¶ 8–10.) At that time, Hokett discovered that a previous payment had also been made to Plaintiff's account using Mr. Creswell's checking account. (*Id.* at ¶ 11.) Mr. Creswell affirmed at that time that he had never given Plaintiff permission to pay her phone bill with his checking account. (*Id.* at ¶ 12.)

The Mayes County District Attorney's Office filed an information charging Plaintiff with obtaining cash or merchandise by bogus check or false pretenses on February 18, 2016. (*Id.* at ¶ 13.) On February 17, 2016,[3] Judge Gore signed a misdemeanor warrant for Plaintiff's arrest. (Doc. 36-5 at 5.) Hokett and Officer Pearson ("Pearson") (collectively, "Officer Defendants") went to Plaintiff's home on February 23, 2016, in full police uniform and in marked police cars to execute the arrest warrant. (Doc. 36 at ¶ 16.) Hokett knocked on the front door while Pearson went to the back of the house. (*Id.* at ¶¶ 17–18.) Plaintiff could hear talking outside but could not understand what was said. (Doc. 8 at ¶ 11.) When Plaintiff did not answer the door, Hokett called

---

[3] The parties have not offered any argument or explanation for why the arrest warrant was dated a day before the information appears to have been filed.

her cell phone number, which showed up on Plaintiff's phone as a call from a "private number." (Doc. 8 at ¶ 13; Doc. 36 at ¶ 19.) Plaintiff did not answer this call. (Doc. 8 at ¶ 13.)

After waiting a couple of minutes after the knock at the door, Plaintiff opened the front door and stepped outside.[4] (*Id.* at ¶ 14.) She then went back into her home and closed the door. (*Id.*) Within seconds of closing the door, Hokett and Pearson entered her home. (*Id.* at ¶¶ 14–15.) Defendant Officers immediately stated that they were there to arrest Plaintiff. (*Id.* at ¶ 15.) Due to Plaintiff's conduct on the date of her arrest, she was also charged with resisting arrest. (*Id.*) That charge was later amended to a charge of obstruction. (*Id.* at ¶ 19.) All the charges against Plaintiff were eventually dismissed. (*Id.* at ¶¶ 16, 19.)

Plaintiff brought this case against Defendant Officers and Town of Salina, Oklahoma ("Salina") on December 10, 2018, bringing claims of malicious prosecution and claims under 42 U.S.C. § 1983. (Doc. 1.) Defendant Officers and Salina moved to dismiss (Doc. 4), and Plaintiff filed her first amended complaint on April 25, 2019 (Doc. 8). In that amended complaint, Plaintiff added as a defendant Mayes County, Oklahoma ("Mayes County"). Mayes County was later dismissed as a party because Plaintiff failed to respond to its motion to dismiss. (Doc. 19.) In April 2022, the case was reassigned to the undersigned judge for further proceedings. (Doc. 29.) The remaining defendants filed this motion for summary judgment on October 13, 2022. (Doc. 36.)

## II. Standard

---

[4] The parties' largest factual dispute lies here, about what happened in between when Plaintiff stepped out of her home and when Defendant Officers entered her home to arrest her. Plaintiff contends that she stepped outside briefly, shut her gate, then went back inside. (Doc. 8 at ¶ 14.) Defendant Officers contend that after Plaintiff stepped outside, Hokett approached her in full uniform and announced that he had a warrant for her arrest, ran to catch up with her, and reached the threshold of her home just as she was shutting the front door. (Doc. 36 at ¶¶ 21–24.) Nevertheless, because these facts are not material to the analysis, the court does not need to leave these facts for a jury to resolve.

Summary judgment is appropriate if the moving party demonstrates that there is no genuine dispute as to any material fact, and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A fact is "material" when it is essential to the claim, and the issues of fact are "genuine" if the proffered evidence permits a reasonable jury to decide the issue in either party's favor. *Haynes v. Level 3 Commc'ns*, 456 F.3d 1215, 1219 (10th Cir. 2006). The movant bears the initial burden of proof and must show the lack of evidence on an essential element of the claim. *Thom v. Bristol—Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2004) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)). The nonmovant must then bring forth specific facts showing a genuine issue for trial. *Garrison v. Gambro, Inc.*, 428 F.3d 933, 935 (10th Cir. 2005). Conclusory allegations are not sufficient to create a dispute as to an issue of material fact. *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). The court views all evidence and reasonable inferences in the light most favorable to the nonmoving party. *LifeWise Master Funding v. Telebank*, 374 F.3d 917, 927 (10th Cir. 2004). Because Plaintiff is pro se, the court will liberally construe her pleadings, but will not make arguments on her behalf. *Whitney v. New Mexico*, 113 F.3d 1170, 1173–74 (10th Cir. 1997).

**III.  Analysis**

Defendants move for summary judgment on Plaintiff's 42 U.S.C. § 1983 claim, Plaintiff's malicious prosecution claim, and Plaintiff's *Monell* claim against Salina. (Doc. 36.) The court will address each claim in turn.

**A.  Plaintiff's 42 U.S.C. § 1983 Claim Regarding Entry of Her Home**

The Officer Defendants argue that they are entitled to qualified immunity and thus, summary judgment on this claim is appropriate. (*Id.* at 15–20.) Plaintiff contends that the material facts are contested and that police violated her rights by not knocking and announcing their

presence when they arrived at her home and before they entered her home. (Doc. 40 at 10–11.) In response, Defendants explain that there is not a dispute of material fact because Plaintiff's version of the story does not conflict with Defendants' version of the story and that Plaintiff has not carried her burden to identify a case showing that this was a clearly established violation of her rights. (Doc. 42 at 2–3.)

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). At the summary judgment stage, to get past qualified immunity, "[t]he plaintiff must demonstrate on the facts alleged (1) that the defendant violated [her] constitutional or statutory rights, and (2) that the constitutional right was clearly established at the time of the alleged unlawful activity." *Shroff v. Spellman*, 604 F.3d 1179, 1188 (10th Cir. 2010) (quoting *Swanson v. Town of Mountain View, Colo.*, 577 F.3d 1196, 1199 (10th Cir. 2009)). District courts have discretion to determine the order in which to consider these two steps. *Pearson*, 555 U.S. at 242.

The court first considers whether it was clearly established that the officers violated Plaintiff's constitutional right to be free from unreasonable search and seizure when they entered her home to execute a misdemeanor arrest warrant. "For a right to be clearly established, there must be Tenth Circuit or Supreme Court precedent close enough on point to make the unlawfulness of the officers' actions apparent." *Mascorro v. Billings*, 656 F.3d 1198, 1208 (10th Cir. 2011) (citing *Weise v. Carper*, 593 F.3d 1163, 1167 (10th Cir. 2010)). Alternatively, the weight of authority from other courts must clearly establish that the law is as the plaintiff explains. *Id.*

The only case Plaintiff identifies as showing that there was a violation of her rights which was clearly established is *United States v. Musa*, 401 F.3d 1208, 1212 (10th Cir. 2005). (Doc. 40 at 11.) "The United States Supreme Court has held that the 'Fourth Amendment incorporates the common law requirement that police officers entering a dwelling must knock on the door and announce their identity and purpose before attempting forcible entry.'" *Musa*, 401 F.3d at 1212 (quoting *Richards v. Wisconsin*, 520 U.S. 385, 387 (1997)).

Plaintiff asserts that the question of whether the officers knocked and announced their presence before entering Plaintiff's home to execute the arrest warrant is a question of material fact to be decided by the jury. (Doc. 40 at 11.) She also notes that according to her version of the facts, there was no flight from arrest and the hot pursuit exception from knock and announce does not apply. (*Id.*)

The court can easily dispose of Plaintiff's arguments. Defendant correctly notes that Plaintiff's version of the story about the initial part of the interaction does not conflict with Defendants' version of the story up to that point. (Doc. 42 at 2.) According to Plaintiff, on February 23, 2016, she was at home when she heard a thunderous banging on the front door of her duplex and heard talking outside, although she could not hear what was being said. (Doc. 8 at ¶ 11.) According to the Officer Defendants, Hokett approached Plaintiff's front door on February 23, 2016 and knocked and announced himself as a Salina police officer. (Doc. 36 at ¶¶ 16–17.) These stories do not conflict. While Hokett was knocking and announcing himself as a police officer, Plaintiff was unable to make out what he was saying. But she acknowledges that she heard talking and she has not put forth evidence of what was said. Therefore, Plaintiff has not created a dispute of material fact concerning whether Officer Defendants announced their presence.[5]

---

[5] The court is required to draw reasonable inferences in Plaintiff's favor as she is the non-movant. *LifeWise Master Funding*, 374 F.3d at 927. But Plaintiff is also required to come forward with evidence to establish that there is a

As to the "hot pursuit," the parties' stories conflict. Plaintiff alleges that she did not see or interact with the officers outside her home and did not speak with the officers until they were in her home executing the arrest warrant. (Doc. 8 at ¶¶ 14–15.) Hokett explains that he got out of his police car in full uniform while Plaintiff was outside, walked toward her, announced he had a warrant for her arrest, and that he ran to catch up with her as she headed back into her house. (Doc. 36 at ¶¶ 22–23.) He also explains that Plaintiff entered her front door and shut it right as he reached the threshold, pushing it open and finding her standing inside. (*Id.* at ¶¶ 24–25.) It is not possible for both versions of events to be true.

The court does not need to reach this hot pursuit issue, though, because the Defendant Officers' entry of Plaintiff's home to execute the misdemeanor arrest warrant was not a violation of Plaintiff's rights which were clearly established. In 2016 (and still today), officers were permitted to forcibly enter an individual's home to execute a misdemeanor arrest warrant as long as the officers knew the individual lived at the residence and that the individual was currently present at the home. *United States v. Thompson*, Case No. CR-16-45-D, 2016 WL 3881099, at *3 n.2 (W.D. Okla. July 13, 2016) ("Numerous courts, including the Tenth Circuit, have held that police officers may enter the home of a person named in a misdemeanor arrest warrant in order to execute the warrant.") (collecting cases); *Atkins v. Sweetwater Cnty. Sheriff's Office*, 463 F. App'x 751, 754 n.5 (10th Cir. Feb. 23, 2012) (noting that officers may enter a home to execute a misdemeanor arrest warrant); *United States v. Clayton*, 210 F.3d 841, 843 (8th Cir. 2000) ("A valid arrest warrant carries with it the authority to enter the residence of the person named in the warrant

---

genuine dispute of material fact, and the version of the story that Plaintiff offers does not actually conflict with the version Defendant Officers tell. The court previously drew an inference in Plaintiff's favor at the motion to dismiss stage, but the motion to dismiss stage is a lower bar and a more lenient standard for plaintiffs than the summary judgment stage. *See Quintana v. Santa Fe Cnty. Bd. of Comm'rs*, 973 F.3d 1022, 1034 (10th Cir. 2020) (noting that standard to survive a motion to dismiss is a "low bar"). Moreover, Defendant Officers called Plaintiff to try to explain what was going on, and Plaintiff admits receiving that phone call, although she did not answer it.

in order to execute the warrant so long as the police have a reasonable belief that the suspect resides at the place to be entered and that he is currently present in the dwelling. . . . We agree with those courts that have held that this principle applies with equal force to misdemeanor warrants.") (internal citations omitted)).  The officers were permitted to enter the home to execute the arrest warrant once they saw that Plaintiff was at home.  The authority cited does not require officers to be in hot pursuit of a suspect in order to enter the home as long as officers had reason to believe that Plaintiff was inside.  And as for the rule that officers must knock and announce before entering a home, Plaintiff has not shown that a genuine dispute of material fact exists.

Accordingly, the court finds that Defendant Officers are entitled to qualified immunity and the court grants summary judgment on this claim to the Defendant Officers.

### B. Plaintiff's Malicious Prosecution Claim

Under § 1983,[6] to show malicious prosecution, "a plaintiff must show: (1) the defendant caused plaintiff's continued confinement or prosecution; (2) the original action terminated in plaintiff's favor; (3) no probable cause supported the original arrest, continued confinement, or prosecution; (4) the defendant acted with malice; and (5) plaintiff sustained damages." *German v. Rhoades*, Case No. CIV-19-0751-F, 2021 WL 619764, at *7 (W.D. Okla. Feb. 17, 2021) (slip copy).

Defendants argue that Plaintiff cannot show a favorable termination[7] and thus, her claim for malicious prosecution must fail.  (Doc. 36 at 20.)  Defendants also argue that there is no

---

[6] Defendants cite Oklahoma law in their motion for summary judgment (Doc. 36 at 20), which is similar to the elements of malicious prosecution under § 1983.  A malicious prosecution claim under Oklahoma law requires a showing of the following elements: "(1) the bringing of the original action by the defendant; (2) its successful termination in favor of the plaintiff; (3) want of probable cause to bring the action; (4) malice; and (5) damages." *Parker v. City of Midwest City*, 850 P.2d 1065, 1067 (Okla. 1993) (citing *Young v. First State Bank, Watonga*, 628 P.2d 707 (Okla. 1981)).  Plaintiff's complaint specifically references § 1983 "bad faith prosecution."  (Doc. 8 at 9.)

[7] The United States Supreme Court recently announced the standard for favorable termination.  *Thompson v. Clark*, 142 S. Ct. 1332, 1335 (2022).  "To demonstrate a favorable termination of a criminal prosecution . . . under § 1983 for malicious prosecution, a plaintiff need only show that his prosecution ended without a conviction."  *Id.*

evidence to suggest that Defendants acted with malice. (*Id.*) Last, Defendants argue that there was probable cause for the charges which were brought against Plaintiff. (*Id.*) Plaintiff argues that there was a favorable termination of the charges, that malice is a question for the jury, and that the charges brought against her were brought without probable cause. (Doc. 40 at 11–12.)

This court need only reach the issue of malice. In the context of malicious prosecution, malice means "the action was brought for any improper or wrongful purpose." *Crow v. United States*, 659 F. Supp. 556, 573 (D. Kan. 1987). Malice does not need to be proven directly and can be inferred where a defendant acted in reckless disregard of a plaintiff's rights. *Id.* Defendants argue that there is no evidentiary support for Plaintiff's claim of malice. (Doc. 36 at 20.) Plaintiff argues that "[o]nly after the facts are established by the jury can the court address malice." (Doc. 40 at 12.) The court has looked at the uncontroverted facts and concludes that there is no evidentiary support for the allegation of malice.

Defendants have shown that they undertook a thorough investigation of the allegations by Mr. Creswell and that they obtained an arrest warrant signed by a judge. Defendant Officers then went to Plaintiff's home to execute the warrant and arrested Plaintiff. Plaintiff was charged and later, both charges were dropped. Nothing in these facts tends to show that Defendants acted with malice. *See Wilkins v. DeReyes*, 528 F.3d 790, 799–801 (10th Cir. 2008) (fact issue regarding malice where officers may have fabricated evidence for arrest and prosecution).

Plaintiff's malicious prosecution claim fails as a matter of law and the court grants summary judgment on this claim to Defendants.

### C. Plaintiff's *Monell* Claim Against Salina

Plaintiff brings a claim against Salina for "bad faith prosecution." (Doc. 8 at 9.) The court understands this claim to be a *Monell* claim for alleged violation of Plaintiff's constitutional rights

by the municipality. *See Monell v. N.Y.C. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). Salina argues that Plaintiff has failed to identify any policy, custom, or practice of unlawful search and seizure or unlawful arrests, nor has she identified a custom of misconduct or a pattern of similar incidents. (Doc. 36 at 22–23.) Plaintiff did not address the *Monell* claim at all in her response. Salina argues that because Plaintiff provides no evidence or arguments on this claim, it is entitled to summary judgment. (Doc. 42 at 4.)

The Tenth Circuit has recently explained a plaintiff's burden on a *Monell* claim:

> To prove such a *Monell* claim, a plaintiff must first show a municipal policy or custom – either an official rule or one so entrenched in practice as to constitute an official policy. . . . Next, a plaintiff must show that the municipality was deliberately indifferent to constitutional violations that were the obvious consequence of its policy. . . . To demonstrate that a municipality acted with deliberate indifference, a plaintiff may show that the municipality had actual or constructive notice that its action or failure to act was substantially certain to result in a constitutional violation and consciously or deliberately chose to disregard the risk of harm. . . . Notice can be established through a pattern of tortious conduct or if a violation of federal rights is a highly predictable or plainly obvious consequence of a municipality's action or inaction. . . . Finally, a plaintiff must show that the policy directly caused his constitutional injury. . . . A plaintiff can establish a direct causal link only by showing that the municipal practice was closely related to the deprivation of rights.

*Finch v. Rapp*, 38 F.4th 1234, 1244 (10th Cir. 2022) (quotations, alterations, and citations omitted).

Plaintiff has not identified any Salina policy, custom, or practice. Plaintiff has also not shown that the municipality was deliberately indifferent. Nor has Plaintiff shown a direct causal link between the policy and her alleged constitutional injury. The court must liberally construe Plaintiff's pleadings, as she is pro se, but it cannot construct an argument for her. *Whitney*, 113 F.3d at 1173–74. Plaintiff's *Monell* claim must fail as a matter of law.

### IV.  Conclusion

For the reasons stated herein, Defendants' motion for summary judgment (Doc. 36) is GRANTED.

IT IS SO ORDERED this 28th day of February, 2023.

*s/ John W. Broomes*
JOHN W. BROOMES
UNITED STATES DISTRICT JUDGE